THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH CHEATEM, Defendant-Appellant.

First District (4th Division) No. 61484

Opinion filed January 14, 1976.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Linda Ann Miller, Assistant State's Attorneys, and Mary C. Ubatuba, Law Student, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Defendant, Ralph Cheatem, and his codefendant, Gawain Gay, were indicted for the offense of attempt robbery. After a trial by jury they were found guilty. Cheatem was sentenced to five years' probation with a term of periodic imprisonment for 69 week-ends and he appeals.

On appeal, defendant Cheatem contends that (1) the State failed to prove the element of intent to commit a robbery beyond a reasonable doubt because the only evidence relating thereto was unbelievable, equivocal and incompetent, and (2) the court improperly admitted evidence of the defendants' election not to make a statement when arrested and of the circumstances surrounding their arrest.

The complainant, Morris O'Shea, testified that on the afternoon of July 31, 1971, he cashed his pension check at a savings and loan and placed $300 in his rear trousers pocket. From there he proceeded to return to his third-floor residence at 8133 Kingston. When he arrived at the building, he walked through the gangway to the rear entrance. He climbed the stairs to the first-floor landing without incident. As he turned to ascend the second flight, the defendants approached him and began to push him. Gay attempted to grab him around the neck while Cheatem tried to push him from the rear and feel for his trousers pocket to find his wallet. After a struggle, he broke loose and drew a service revolver from his right trousers pocket. He fired a shot in the direction of each man and then ran to his apartment where he called the police. He stated that the gun was one he had retained from his prior service with the police department.

On cross-examination O'Shea testified that he had been a police officer for 31 years and that he retired in 1966 at the rank of detective. He asserted that the defendants approached him from the rear and that he shot them because he feared great bodily harm.

Officers Merole and Curtin testified that they received a call that a man had been shot at 8133 Kingston. They proceeded to that address, and upon arrival found Gay lying on the sidewalk. Gay then was transported to the hospital for medical attention. While at the hospital Officer Merole was approached by Cheatem who informed him that he had been shot.

Gawain Gay testified on his own behalf and stated that he was 18 years of age. He resided with his parents in a building just around the corner from that of the complainant. Gay said that on the day in ques-

tion he had been with Cheatem. He departed his company and left alone to go to a friend's house. As he was cutting through the gangway adjoining his building, he noticed that "* * * a man had a gun out on me." The man instructed Gay to "[c]ome on upstairs." Gay started to climb the stairs with the man behind him. When he was two steps past the first-floor landing, he tried to jump over the bannister and the man shot him. On cross-examination Gay testified that when the complainant pointed the gun at him, he said, "Hey, I know what you are trying to do." Gay then asked him, "What are you talking about?"

Ralph Cheatem also testified on his own behalf. He stated that he was in the Air Force. He lived diagonally across the street from the complainant's building. On the day in question he had a brief conversation with Gay at the corner of 82nd and Kingston. Gay then walked across the street and through the gangway. Cheatem heard a shot and went to investigate. When he got to the end of the gangway, he saw a man standing there with a gun pointed at him. As he turned to run, the man shot him. Later he went to the hospital.

■■ Defendant first contends that the evidence was not sufficient to prove the element of intent to commit a robbery beyond a reasonable doubt. Section 8—4 of the Illinois Criminal Code provides that "[a] person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1971, ch. 38, par. 8—4.) The intention to commit a criminal offense need not be expressed, but rather it may be inferred from the acts of the accused and the surrounding circumstances. (*People v. Hiller*, 7 Ill.2d 465, 131 N.E.2d 25.) Thus, it has been held that a specific demand for money is not necessary to prove intent to commit a robbery. *People v. Hawkins*, 54 Ill.App.2d 212, 203 N.E. 2d 761.

The evidence is in conflict. The complainant testified that he was attacked physically by both defendants on the first-floor landing of his building, and that Cheatem attempted to remove his wallet from his rear trouser pocket. The defendants maintained that they were not together at the time, and that each was separately confronted by the complainant and shot.

Cheatem argues that the complainant's version is improbable. He emphasizes that both he and Gay lived in the close vicinity of the complainant's residence, and that it would be unreasonable to believe that they would attempt to rob a neighbor in broad daylight and without any effort to conceal their identity. Cheatem further argues that the manner in which they allegedly tried to rob the complainant is highly unreason-

able. They carried no weapons and spoke no words. Finally, Cheatem argues that the elements of intent could be inferred only from the complainant's uncorroborated testimony that Cheatem was trying to find his pocket or wallet.

■■ In our opinion a clearer question of fact cannot be presented. The law is well settled that the question of witness credibility and the weight to be afforded their testimony is to be determined by the jury. (*People v. Jennings,* 84 Ill.App.2d 33, 228 N.E.2d 566.) Apparently, the jury chose to believe the complainant when he stated that the defendants accosted him on the first-floor landing of his building and attempted to rob him. Upon review of the record we hold that there was sufficient credible evidence to prove the defendant's guilt beyond a reasonable doubt.

■■ Lastly, it is contended that the court improperly admitted evidence of the defendants' election not to make a statement when arrested and of the circumstances surrounding their arrest. This argument stems from the testimony of Officer Merole that Gay demonstrated hostility when arrested and that Cheatem was less than anxious to reveal that he had been shot. No objections were made at trial to the admission of this evidence, and accordingly they cannot be raised for the first time in this court. (*People v. Hiller,* 7 Ill.2d 465, 131 N.E.2d 25.) Moreover, we believe the evidence of the circumstances surrounding Cheatem's arrest was properly admitted to connect him with the crime. We have examined the cases cited by defendant and find them to be inapplicable on the facts.

Accordingly, the judgment is affirmed.

Affirmed.

JOHNSON, P. J., and DIERINGER, J., concur.